## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

**INVENTEL.TV LLC,**

Plaintiff,

~ *versus* ~

**FOOTPRINT INSOLE TECHNOLOGY, INC.;**
*and* **KITTYBABE TRADING LIMITED**,

Defendants.

Index No.  2:24-cv-00861

**MEMORANDUM OF LAW IN OPPOSITION** *to*
**PLAINTIFF'S EMERGENCY MOTION FOR**
**TRO AND PRELIMINARY INJUNCTION**

Filed By:  Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 401-6910
e-mail: bg@gottesmanlegal.com
*Counsel for Defendants*

## **Table of Contents**

A.   Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B.   Introduction and Overview
of the Legal Argument in this Memorandum . . . . . . . . . . . . . . . . . . . . . . . . 7

C.   Factual and Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

D.   Argument: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   i.   Standard for Entry of Mandatory Preliminary Injunction
   and Temporary Restraining Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   ii.   The Two Threshold Requirements are not Met . . . . . . . . . . . . . . . . . . . . 11

       a.   There is no Irreparable Harm . . . . . . . . . . . . . . . . . . . . . . . . . 11

       b.   Plaintiff has not and cannot show
       it will win on the merits much less
       a "substantially likelihood of success". . . . . . . . . . . . . . . . 16

           i.)   What the Plaintiff's Motion
           Is and Is Not . . . . . . . . . . . . . . . . . . . . . . . . . 16

           ii.)   The Alleged Defamation . . . . . . . . . . . . . .19

           iii.)   The Alleged "Disclosures" . . . . . . . . . . . 21

E.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**A.      Table of Authorities**

i.      **Cases**                                                                                                      *pages*

*Adams v. Freedom Forge Corp.*,
 204 F.3d 475 (3d Cir. 2000) ........................................................................... 11

*Apollo Tech. Corp. v. Centrosphere Indus. Corp.*,
 805 F.Supp. 1157 (D.N.J. 1992) ..................................................................... 11

*Arista Records v. Flea World, Inc.*,
 356 F.Supp. 2d 411 (D.N.J. 2005) ................................................................. 20

*Beverly Enterprises v. Trump*,
 182 F.3d 183 (3d Cir. 1999) ........................................................................... 20

*C & C Products, Inc. v. Messick*,
 700 F.2d 635 (11th Cir. 1983) ....................................................................... 13

*Campbell Soup Co. v. ConAgra, Inc.*,
 977 F.2d 86 (3d Cir. 1992) ...................................................................... 11, 12

*Checker Cab of Phila. Inc. v. Uber Techs., Inc.*,
 643 Fed.Appx. 229 (3d Cir. 2016) ................................................................. 11

*Cipollone v. Liggett Group, Inc.*,
 785 F.2d 1108 (3d Cir. 1986) ......................................................................... 13

*Color St. LLC v. Audere, Inc., Case*,
 No. 22-cv-2267, Color St. LLC,
 2023 U.S.Dist. LEXIS 198588 (2023) ........................................................... 10

*Dairy Stores, Inc. v. Sentinel Pub. Co.*,
 104 N.J. 125 (1986) ....................................................................................... 17

*Del. River Port Authority v. Transamerican Trailer Transport, Inc.*,
 501 F.2d 917 (3d Cir. 1974) ............................................................................. 9

*Dijkstra v. Westerink*,
 168 N.J. Super. 128 (App. Div.) ..................................................................... 17

*ECRI v. McGraw-Hill, Inc.*,
 809 F.2d 223 (3d Cir. 1987) ........................................................................... 11

*Ferring Pharms., Inc. v. Watson Pharms., Inc.*,
    765 F.3d 205 (3d Cir. 2014) ................................................................................. 10

*Figueroa v. Precision Surgical, Inc.*,
    423 Fed.Appx. 205 (3d Cir. 2011) ........................................................................ 11

*G.D. v. Kenny*,
    205 N.J. 275, 15 A.3d 300 (2011) ........................................................................ 20

*Gaia Gardens, LLC v. Twp. of Montclair, Case*,
    No. 23-cv-20733, 2023 U.S. Dist. LEXIS 185495 (D.N.J. Oct. 14, 2023)......................... 11

*Hope v. Warden York County Prison*,
    972 F.3d 310 (3d Cir. 2020) ................................................................................. 10

*Hotaling & CO., LLC v. Berry Sols. Inc.,  Case*,
    20-cv-18718, 2022 U.S. Dist. LEXIS 178066 (D.N.J. Sept. 29, 2022) ............................ 20

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
    882 F.2d 797 (3d Cir. 1989) ................................................................................. 11

*Kim v. Hanlon, Case*,
    2024 U.S.App. LEXIS 9375 (2024) .................................................................. 9, 10

*Kramer v. Thompson*,
    947 F.2d 666 (3d Cir. 1991) ................................................................................. 16

*Legend Biotech USA Inc. v. Liu, Case*,
    No. 23-cv-02965, 2024 U.S.Dist. LEXIS 37012 (D.N.J. Mar. 4, 2024)........................... 12

*Legend Biotech*,
    2021 U.S.Dist. LEXIS 10192 (2021) ............................................................... 12, 13

*Levine v. BlockFi Inc., Case*,
    No. 21-cv-11934, 2021 U.S.Dist. LEXIS 150300 (D.N.J. Aug. 9, 2021) ......................... 11

*Moreau v. Walgreen Co.*,
    387 F.App'x 202 (3d Cir. 2010) ........................................................................... 17

*Moreno v. Tringali*,
    2015 U.S. Dist. LEXIS 84761 (D.N.J. June 30, 2015) ................................................ 15

*Novartis Consumer Health, Inc. v. Johnson-Merck Consumer Pharms. Co.*,
    290 F.3d 578 (3d Cir. 2002) ................................................................................. 10

*O'Keefe v. WDC Media, LLC, Case,*
  13-cv-6530, 2015 U.S. Dist. LEXIS 41127 (D.N.J. Mar. 30, 2015) .................................. 20

*Rastelli Partners v. Baker, Case,*
  23-cv-02967 (D.N.J.) ........................................................................................ 15

*Rastelli Partners, LLC v. Baker, Case,*
  No. 23-cv-2967 ................................................................................................ 13

*Rastelli Partners, LLC v. Baker,*
  23-cv-2967 (D.N.J.) .......................................................................................... 14

*Rastelli Partners,*
  2023 U.S.Dist. LEXIS 125825 (2023) .................................................................. 13, 14, 15

*Read v. Profeta,*
  397 F.Supp. 3 ................................................................................................... 20

*Reilly v. City of Harrisburg,*
  858 F.3d 173 (3d Cir. 2017) ............................................................................... 9, 10

*Smart v. Cnty of Gloucester, Case,*
  No. 20-cv-12408, 2023 U.S.Dist. LEXIS 119543 (D.N.J. July 11, 2023) ......................... 17

*State v. Rader,*
  62 Or. 37, 124 P. 195 (1912) ............................................................................... 13

*ThemoLife,*
  2014 U.S.Dist. LEXIS 34650 (2014) ...................................................................... 15

*ThermoLife Int'l LLC v. Connors, Case,*
  13-cv-4399 ...................................................................................................... 15

*TriFound Fin., LLC v. Greenberg, Case,*
  No. 20-cv-19303 ............................................................................................... 12

*Trinity Indus., Inc. v. Chi. Bridge & Iron Co.,*
  735 F.3d 131 (3d Cir. 2013) ................................................................................ 9

*USA Techs., Inc. v. Tirpak,*
  2012 U.S. Dist. LEXIS 72318 (E.D. Pa. May 24, 2012) .............................................. 15

*v. Verizon N.J., Case,*
  No. 19-cv-19183, 2021 U.S.Dist. LEXIS 166313 (D.N.J. Sept. 1, 2021) ......................... 11

*Wright-Phillips v. United Airlines, Inc., Case*,
   No. 20-cv-14609, 2021 U.S.Dist. LEXIS 63925 (D.N.J. Apr. 1, 2021) ........................... 17

**STATUTES**

35 U.S.C.A. § 112 ...................................................................................................... 12

**STATE RULES**

New Jersey Evidence Rule 408 ................................................................................... 18

**OTHER AUTHORITIES**

https://www.google.com/books/edition/The_Index/5akhAQAAMAAJ ...................................... 17

https://www.youtube.com/watch?v=yGUrVKSk-Uo.................................................................. 13

**B.**     **Introduction and Overview
of the Legal Argument in this Memorandum**

The Plaintiff has not and cannot meet the heavy burden required to justify the imposition a prior restraint on the Defendants' journalistic investigation into matters of public concern to the Skateboarding community and others impacted by the Plaintiff's wrongdoing.

As described below, the Preliminary Injunction must be denied because there are no allegations of irreparable damages, a threshold requirement whose absence alone requires denial of the Motion.

Further, the Plaintiff cannot meet the other threshold requirement because they are unlikely to succeed.  Plaintiff is unlikely to succeed because there has been no defamation:  the alleged publications are true, are substantially true, are not plausibly alleged to have been made with malice, and/or are protected opinion and hyperbole.

And even if there were to be irreparable injury and there was a substantial likelihood of success on the merits, prior restraints on future defamation is almost never available – and certainly not here on the thin record of this Motion for a Preliminary Injunction.

For these reasons and as explained more fully below, the Defendants respectfully submit that the Motion for a Preliminary Injunction should be denied in its entirety and with prejudice.  By separate Motion, the Defendants will move to vacate the TRO that was imposed, move to clarify, move for a hearing to be held this week (week of May 13, 2024), and move for a Stay of proceedings as for attorneys' fees as provided under the New Jersey Uniform Public Expression Protection Act provides.

### C.      **Factual and Procedural Background**

The Defendants respectfully incorporate the Affidavit in Opposition by Jason Guadalajara, which we anticipate being docketed today or on Tuesday (the Affiant is in Asia and the extreme time-zone differences may inhibit receipt of the signed Affidavit until tomorrow). Broadly, the Affidavit describes how the Parties met, how the Defendants became aware of the fraudulent nature of the Plaintiff's business, and what caused the Parties to go their separate ways.

The Affidavit also shows that the alleged 'defamation' is true, is substantially true, was not made with malice, was subject to privilege, and/or in the alternative opinion and rhetorical hyperbole.

Procedurally, Plaintiff's moved by Emergency Motion for the issuance of Temporary Restraining Order and Preliminary Injunction, ECF 10 (April 10, 2024). Plaintiff never served process of the Summonses and Amended Complaint or any other pleadings in this matter, although they did send an e-mail with some of the papers in support of the Emergency Motion to the undersigned on May 6, 2024, *See* Declaration of Jeffrey Lubin, ECF 14, at p. 7 (May 6, 2024).

On May 9, 2024, this Honorable Court issued the Temporary Restraining Order as drafted by the Plaintiff (including the decretal paragraphs drafted by the Plaintiff that included cryptic and inexplicable descriptions of what material was required to be removed and what was being restrained), ECF 15 (May 9, 2024). The Honorable Court scheduled a Hearing, ECF 16, and invited the Defendants' to move to vacate the prior restraints in the TRO, which the Defendants will do by separate motion.

This Memorandum narrowly addresses the Motion for the Preliminary Injunction itself and explains why the Plaintiff has not met their burden to establish that a Preliminary Injunction should be granted.

### D.     Argument

**i.     Standard for Entry of Mandatory Preliminary Injunction and Temporary Restraining Order**

This Honorable Court's Order to Show Cause "**temporarily compelled**" (emphasis in original) Defendants and engage in certain behavior, Order to Show Cause at p. 4 (ECF 15) and the underlying Motion seeks an Order for Defendants to affirmatively engage in certain activities, Order to Show Cause at p. 3 at ¶ 3.  This context is important because unlike orders to maintain the *status quo*, a "mandatory injunction is an extraordinary remedy that is only granted sparingly by the courts." *Kim v. Hanlon*, Case No. 24-1594, 2024 U.S.App. LEXIS 9375, at *16 , ___ F.4th ___ (Apr. 17 2024) *quoting Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013).

The request for a mandatory injunction also changes the standard for granting the Motion.  To obtain *any* preliminary injunctive relief in the Third Circuit the movant "must meet the threshold for the two 'most critical factors' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that they are more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017) as amended (June 26, 2017).  Only if those gateway factors are met, the court will then consider, "the possibility of harm to other interested persons from the grant or denial of the injunction" and "the public interest." *Reilly*, 858 F.3d at 176 *quoting Del. River Port Authority v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974).

That changes where a mandatory injunction is sought.  For the mandatory relief sought by the Movant in this case, "over and above the showing required to maintain the status quo . . . a plaintiff must 'show a substantial likelihood of success on the merits and that [one's]

right to relief is indisputably clear[.]" *Kim*, 2024 U.S. App. LEXIS 9375, at \*17 *quoting Hope v. Warden York County Prison*, 972 F.3d 310, 320 (3d Cir. 2020).

*In summary*, to succeed on this motion, the Plaintiff must show it can win on the merits and likely suffer irreparable harm.  And as it relates to the mandatory nature of the requested relief the Plaintiff must further establish a likelihood of success on the merits and that their right to relief is indisputably clear.  If those threshold factors are met, then the Court must assess harm to interested persons and the public interest as a whole.  Only after those requirements are met and the full spectrum of interests are considered, will the Court then engage in its balancing test to determine if the *highly unusual* injunction that will impose prior restraints on the Defendants' first Amendment and journalist activity should issue, *See Reilly*, 858 F.3d at 176 (collecting cases).

And as this Court has highlighted, "the primary purpose of preliminary injunctive relief is 'maintenance of the status quo until a decision on the merits of a case is rendered'" *Color St. LLC v. Audere, Inc.*, Case No. 22-cv-2267, 2023 U.S.Dist. LEXIS 198588, at \*16-17 (D.N.J. Nov. 3, 2023) and any injunction is "'an extraordinary remedy, which should be granted in only limited circumstances.'" *Color St. LLC*, 2023 U.S.Dist. LEXIS 198588, at \* 16 *quoting Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014); *Novartis Consumer Health, Inc. v. Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002).

With that context, we turn to the substance of the Motion and explain why the Plaintiff has not and cannot meet their high burden to obtain injunctive relief and for this court to issue a mandate to the Defendants.

ii.      **The Two Threshold Requirements are not Met**

      a.)      **There is no Irreparable Harm**

Proving irreparable harm "is not an easy burden." *Checker Cab of Phila. Inc. v. Uber Techs., Inc.*, 643 Fed.Appx. 229, 232 (3d Cir. 2016) *quoting Adams v. Freedom Forge Corp.*, 204 F.3d 475, 485 (3d Cir. 2000). That's because "[i]n order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) *quoting Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) and collecting cases. It must also "be of a peculiar nature, so that compensation in money cannot atone for it." Campbell Soup Co, 977 F.2d at 91 *quoting ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987).

That's why in *Checker Cab*, the Third Circuit affirmed the denial of the preliminary injunction since the loss of customers was deemed a pure economic harm that can be compensated with a monetary award. *See also Gaia Gardens, LLC v. Twp. of Montclair*, Case No. 23-cv-20733, 2023 U.S. Dist. LEXIS 185495, at *30 (D.N.J. Oct. 14, 2023)(finding preliminary injunction is inappropriate because 'the loss of potential business opportunities, profits, customers, or contracts is compensable by money damages and does not constitute irreparable injury', *Apollo Tech. Corp. v. Centrosphere Indus. Corp.*, 805 F.Supp. 1157, 1209 (D.N.J. 1992) and even 'the destruction of a business' would not qualify as irreparable harm, *Figueroa v. Precision Surgical, Inc.*, 423 Fed.Appx. 205 (3d Cir. 2011)) *Accord Tenny Journal Communs. v. Verizon N.J.*, Case No. 19-cv-19183, 2021 U.S.Dist. LEXIS 166313 (D.N.J. Sept. 1, 2021); *Levine v. BlockFi Inc.*, Case No. 21-cv-11934, 2021 U.S.Dist. LEXIS 150300 (D.N.J. Aug. 9, 2021).

In the Plaintiff's telling of the factual background – which Defendants' dispute as described in the Guadalajara Affidavit – the defamatory allegations and disclosure of confidential information have already occurred.  The Preliminary Injunction sought by the Plaintiff is a prior restraint on hypothetical "further disclosure" and "further defamation".  The Third Circuit has specifically addressed the issue of "further disclosure" and it is black letter law that injunctions against *further* disclosure or defamation cannot be granted.

In *Campbell Soup Co.*, the District Court granted a Motion for a preliminary injunction to prevent *further disclosures* of alleged trade secrets.  On appeal, the Third Circuit held that:

> "the district court erred in granting a preliminary injunction on the evidence presented.  First, the evidence did not show Campbell was threatened with irreparable injury based on the disclosure of the alleged trade secret.  At oral argument counsel for Campbell argued that a preliminary injunction was necessary to alleviate immediate irreparable harm because of the possibility that ConAgra would 'further disclose' the alleged trade secret.  We fail to see how immediate irreparable harm could arise at this time in light of the fact that ConAgra has *already* revealed the non-fried process in a patent application.  Presumably, ConAgra revealed the process it thought was the 'best mode' of producing a non-fried chicken product that had the taste and appearance of being fried in compliance with 35 U.S.C.A. § 112 (West 1984).  A threat of disclosure may establish immediate irreparable harm but 'further' disclosure of something already revealed cannot."

*Campbell Soup Co.*, 977 F.2d at 92 (emphasis in original).

As another Court in this District confirmed earlier this year, "The irreparable harm inquiry concerns threat of future harm, not past harm." *Legend Biotech USA Inc. v. Liu*, Case No. 23-cv-02965, 2024 U.S.Dist. LEXIS 37012, at *29 (D.N.J. Mar. 4, 2024) *quoting TriFound Fin., LLC v. Greenberg*, Case No. 20-cv-19303, 2021 U.S.Dist. LEXIS 10192, at *5 (D.N.J. Jan. 20, 2021).  And in *Legend Biotech*, District Judge Brian R. Martinotti declined to issue an injunction

"particularly when Plaintiff has demonstrated no immediate need for this information to prevent future harm." *Legend Biotech*, 2021 U.S.Dist. LEXIS 10192, at *29.

Simply put, while it is "not an easy task to unring a bell" *State v. Rader*, 62 Or. 37, 40, 124 P. 195, 196 (1912), a preliminary injunction is simply not the tool for that job.

The three cases referred to by the Plaintiff in their moving papers do not provide support for their position that an injunction can issue for threatened future disclosures and defamation.

My Learned Colleague cites *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108 (3d Cir. 1986), *See* MEMORANDUM IN SUPPORT, ECF 10-2 at p. 14. But respectfully, *Cipollone* was a situation where no disclosure of confidential information had yet occurred. The Third Circuit upheld an injunction against future and initial disclosure of confidential information was appropriate. The *Cipollone* Court contrasted that injunction against future and initial disclosure with the situation in *C & C Products, Inc. v. Messick*, 700 F.2d 635, 637-38 (11th Cir. 1983). *C & C Products* confirms that if confidential material has already been released, then there is no further role for a preliminary injunction because the issue is moot.

In other words, once rung, an injunction cannot be used to unring the bell.

My Learned Colleague further cites *Rastelli Partners, LLC v. Baker*, Case No. 23-cv-2967, 2023 U.S.Dist. LEXIS 125825 (D.N.J. July 21, 2023). Here's what happened: Former NFL Star, Al "Bubba" Baker obtained an offer from the "Sharks" for his patented De-Boned Baby Back Rib Steaks in 2013, *See* MR. WONDERFUL & DAYMOND FACE OFF | SHARK TANK IN 5, CNBC Ambition, https://www.youtube.com/watch?v=yGUrVKSk-Uo (last checked May 12, 2024). Daymond John reached a deal with Bubba and they jointly entered into a relationship Rastelli as the distributor.

Things went sideways with the business relationship and ultimately the Parties entered into a settlement agreement that included a tight non-disparagement clause.  For whatever reason, Bubba and his daughter "engaged in this social media and news media war against the Rastellis [] and Daymond John." *Rastelli Partners*, 2023 U.S.Dist. LEXIS 125825 at *25.

Daymond John applied for a TRO to enforce the non-disparagement clause in their settlement agreement.  ***That TRO was denied by District Judge Kugler***, *See* ORDER in *Rastelli Partners, LLC v. Baker*, 23-cv-2967 (D.N.J.) at ECF 3, p 1 ("IT IS HEREBY ORDERED that the Court DENIES Plaintiffs application for a TRO pending the below-referenced hearing".)

The *Rastelli* case continued last summer with six days of argument and evidence, a full trial on the merits, and supplemental briefing with proposed findings of fact and conclusions of law based on the exhibits and testimony presented during the weeks-long hearings, briefing, and trial, *Rastelli Partners*, 2023 U.S.Dist. LEXIS 125825, at *2.  District Judge Kugler clarified that he had "turn[ed] the proceeding into an application for a permanent injunction." And only after building the full record, the Court concluded that while the TRO was premature, a permanent injunction was appropriate.

Some important distinguishing features between the posture of *Rastelli* and of this case: Daymond John and his team were prominent television personalities, where the damage to their reputation by a judgment-proof, disgruntled contestant on a glorified game show was severe and the Court ultimately found the Defendants were breaching the contract out of pure malice. The Court concluded that it "can only draw one logical conclusion: the Bakers are not doing this to try to improve the business or to further some other legitimate purpose.  Instead, the Bakers' enmity, antipathy, and animosity toward the Rastellis and John overcame their financial self-interest and their ability to reasonably work through their issues with the Rastellis and John.  That

vitriol then compelled them to breach the 2019 Settlement Agreement and make these repeated, targeted, hostile, negative, and disparaging public comments and posts." *Rastelli Partners*, 2023 U.S.Dist. LEXIS 125825, at *38.

Further, as was repeatedly highlighted at the hearing and in the briefing in *Rastelli* the underlying issue was a show-business, reputational management, breach of contract case. All the cases cited by the *Rastelli* plaintiffs in support of their successful and unchallenged motion for the permanent injunction involved breach of contract, including *Moreno v. Tringali*, 2015 U.S. Dist. LEXIS 84761, *4 (D.N.J. June 30, 2015); *USA Techs., Inc. v. Tirpak*, No. 12-2399, 2012 U.S. Dist. LEXIS 72318, at *22-24 (E.D. Pa. May 24, 2012), S*ee generally* PROPOSED FINDING OF FACTS in *Rastelli Partners v. Baker*, Case 23-cv-02967 (D.N.J.) ECF 27 at pp. 36-38.

In summary, a final judgment for a permanent injunction after weeks of hearings and a full trial on the merits, that addressed a show-business, reputational management, breach of contract case by a broke, disgruntled and malicious game show contestant trying to illegitimately gin up controversy with proven false claims provides no precedent for the issuance of a highly unusual prior restraint in this proceeding.

The final case cited by my Learned Colleague was by District Judge McNulty in *ThermoLife Int'l LLC v. Connors*, Case 13-cv-4399, 2014 U.S.Dist. LEXIS 34650 (D.N.J. March 17, 2014). This came before District Judge McNulty on a Motion for a Default Judgment and Permanent injunction where, the Court admitted, it "was disadvantaged, of course, by the lack of any submission by defendant Connors." *ThemoLife*, 2014 U.S.Dist. LEXIS 34650, at *6. The *ThermoLife* Court, having to accept all allegations as true for purposes of the Default Judgment, wrestled with the traditional rule that "equity lacks the power to enjoin defamation". District Judge McNulty ultimately concluded that since: (i.) the injunction was about property rights and not

defamation; (ii.) the Defendant had defaulted; (iii.) Defendant ignored the lawsuit; and (iv.) the injunction can be tailed to minimize damage, *ThemoLife*, 2014 U.S.Dist. LEXIS 34650, at *18 *citing Kramer v. Thompson*, 947 F.2d 666 (3d Cir. 1991), a modified version of the requested injunction could issue.

Rather than opening the door to the injunction sought here, *ThermoLife Int'l* emphasizes how truly extraordinary it would be to issue an injunction against further alleged defamatory activity.  And even on a motion for a permanent injunction, even with a defaulting Defendant, even with a judgment-proof Defendant, even with ongoing defamation, the *ThermoLife* Court had to twist itself into a four-sided pretzel to find a pathway to a limited permanent injunction which was cut down substantially from the Movants original request and narrowly tailored to protect the first amendment rights of the defaulting Defendant.

For these reasons, the Defendants respectfully submit that the caselaw is clear that there has been no allegation of irreparable damage as a matter of law, and even if the Court were to erroneously conclude that the Defendants were engaged in tortious conduct – we respectfully submit that it cannot and will not – the Court is without authority to issue the requested injunctions.

      **b.)   Plaintiff has not and cannot show it will win on the merits**
              **<u>Much less a "substantial likelihood of success"</u>**

           **i.)   What the Plaintiff's Motion for a**
                   **Preliminary Injunction Is and Is Not**

Respectfully, the Defendants have had difficulty fully wrapping their arms around the two purported claims that serve as the basis for this Motion for a Preliminary Injunction.  What

may be helpful to do is chisel through the Amended Complaint of what is not in the claim, to help determine what claims are and are not before this Court.[1]

The first thing we need to chip away at is the claims of "extortion" detailed at length in the Affidavit in Support and accompanying Memorandum of Law by the Plaintiff's Counsel.

To be clear, the Complaint contains no cause of action for "Extortion". Nothing alleged in the Complaint or the affidavit in support provide a factual basis for any such cause of action.

Further, the Third Circuit has confirmed that under New Jersey law, "citizens have a qualified privilege to make statements to authorities for the prevention of crime." *Dairy Stores, Inc. v. Sentinel Pub. Co.*, 104 N.J. 125 (1986) *citing Dijkstra v. Westerink*, 168 N.J. Super. 128, 134-36 (App. Div. 1979); *Moreau v. Walgreen Co.*, 387 F.App'x 202, 204 (3d Cir. 2010). Separately, Federal Courts in New Jersey have recognized a citizen's litigation privilege under New Jersey law to communicate with authorities "for the prevention and detection of crime." *Smart v. Cnty of Gloucester*, Case No. 20-cv-12408, 2023 U.S.Dist. LEXIS 119543, at *46 (D.N.J. July 11, 2023) *quoting Wright-Phillips v. United Airlines, Inc.*, Case No. 20-cv-14609, 2021 U.S.Dist. LEXIS 63925, at *19 (D.N.J. Apr. 1, 2021).

Notably, the Plaintiff's nearly baker's dozen of causes of actions in their Amended Complaint *does not* allege malicious prosecution. Nor does the Amended Complaint allege that the Defendants' transparency about their discussion with law enforcement authorities was malicious or included any untrue or false statements.

---

[1]  *See* The Index, p. 333 (July 10, 1879)("as Mr. Ruskin says, 'Sculpture, *per se*, is the simplest thing in the world. All you have to do is to take a chunk of marble and a hammer and chisel, make up your mind what you are about to create and chip off all the marble you don't want.") *available online at* https://www.google.com/books/edition/The_Index/5akhAQAAMAAJ

For all the storm and fury about "extortion" – none of that is relevant to any prong of the Motion before the Court, nor is it relevant to any Cause of Action.  Nor can the protected activity of cooperation with law enforcement provide any basis for relief.

Further, under Federal and New Jersey Rules of Evidence 408, caselaw in federal and state courts and the consistent practice in the Third Circuit, any and all settlement negotiations are entirely confidential, prejudicial in a manner which would outweigh any probative value, and completely inadmissible.

That becomes obvious when we analyze the factual basis for the alleged "extortion" and related allegations about threats.  Plaintiff's narrative relies entirely on partial and edited extracts of alleged communications between the parties.  Communications which on their own terms are titled: "RE PROPOSED SETTLEMENT TERMS", *See* Plaintiff's Affidavit in Support, ECF 10-1, p. 24.  These are a non-starter for consideration on this Motion.

Partial, context-free references during the course of self-described settlement discussions to hypothetical and entirely imaginary "book deals", "Netflix documentaries" (Affidavit in Support at pp. 24-27) and other spicy back-and-forth between Counsel and par for the course for investigative reporters and for those engaged in business litigation in 2024. And more importantly, these settlement discussions are irrelevant, they are prejudicial in a manner that outweighs its probative value, and they are absolutely inadmissible as a matter of law.

Once you pull away the irrelevant and inadmissible allegations about "extortion", the inadmissible and entirely irrelevant negotiations between the Parties you are left with a mundane business dispute.  As the operative pleading put it, "The Parties were finger pointing blame at each other regarding the lack of inventory with each party claiming the other was at fault. Footprint claimed that inventory was not timely because payments were not timely; and Inventel

claimed that payments were not timely because inventory was not timely." Amended Complaint, ECF 7, p. 46.  This sort of mundane breach of contract claim/counterclaim is not one which can invoke the grave intervention of this Honorable Court to enjoin first amendment activity by the Defendants.

**ii.)**     <u>**The Alleged Defamation**</u>

As described in the Guadalajara Affidavit, any alleged "defamation" of the Plaintiff was made in the context of journalistic investigation into matters of public concern to the Skateboarding community.  Although it is difficult to follow the thread of the Abdul Affidavit, it all seems to center on this piece of reporting by Footprint Investigations:



Illustration 1 – Overview and introduction of the Defendants' Investigation

The alleged defamation concerns public interest reporting on a matter of great public interest about public figures or limited public figures, the Plaintiff needs to establish that the Footprints investigations team "acted negligently or with actual malice", *Hotaling & CO., LLC v. Berry Sols. Inc.*, Case 20-cv-18718, 2022 U.S. Dist. LEXIS 178066, at *15 (D.N.J. Sept. 29, 2022) *quoting O'Keefe v. WDC Media, LLC*, Case 13-cv-6530, 2015 U.S. Dist. LEXIS 41127, at *3 (D.N.J. Mar. 30, 2015); *G.D. v. Kenny*, 205 N.J. 275, 292-93, 15 A.3d 300 (2011)).

Further, under New Jersey law, truth is an absolute defense, and for legal purposes, the alleged defamatory claims are at least substantially true. *Hotaling*, 2022 U.S. Dist. LEXIS 178066, at *16 *quoting Read v. Profeta*, 397 F.Supp. 3d 597, 651 (D.N.J. 2019).

Additionally and in the alternative, the supposedly defamatory claims are and would be understood as "no more than rhetorical hyperbole or a vigorous epithet [and therefore] not defamatory" *Beverly Enterprises v. Trump*, 182 F.3d 183, 187 (3d Cir. 1999)(this is a one Rosemary Trump - apparently no relation to the former President).[2]  New Jersey law "affords 'a great amount of protection for statements that are obviously 'rhetorical hyperbole . . . '" A*rista Records v. Flea World, Inc.*, 356 F.Supp. 2d 411, 425-26 (D.N.J. 2005) *quoting Mattel v. MCA Records, Inc.*, 28 F.Supp. 2d 1120, 1160-61 (C.D.Cal. 1998).

In summary, the Plaintiff has not shown that it is indisputably clear that they have a substantial likelihood of success on the merits of showing that the Defendant' alleged defamation

---

[2]   Although on the subject of the former President's imbrication in defamation actions, we will note that while not precedent in this Court, District Judge Kaplan in SDNY has *not* issued an injunction or other prior restraint against the former President even after a finding of serial defamation that caused millions of dollars in damage, *See, e.g.,* The Hill, DONALD TRUMP'S REPEATED LIBEL – WHERE DOES THE LAW STAND? (June 1, 2023) available at https://thehill.com/opinion/judiciary/4028406-donald-trumps-repeated-libel-where-does-the-law-stand/ (popular press article discussing Plaintiff's strategy in *Carroll v. Trump* actions and why prior restraint on future defamation not available).

is not true, is not substantially true, was not published with malice, was not subject to any privilege, and which was not rhetorical hyperbole.  Certainly not to the level that would justify a prior restraint on the Defendants' speech.

### iii.)   <u>The Alleged Disclosures</u>

The Defendant respectfully submits that the moving papers have not established a likelihood of success for any claim arising any alleged disclosure of confidential information.

As best as the Defendants' can understand the Plaintiff argument, it is summarized without reference to case law in Plaintiff's Moving Brief, ECF 10-2 at pp. 16-17, based on a random excerpt from a settlement communication that ongoing litigation may result in public disclosure of the Parties' relationship.  Nothing actionable about that – certainly not at the level of an indisputably clear likelihood of success, required for a mandatory injunction.

Having failed to do so, no injunction can issue.  And to the extent that the Plaintiff more clearly explains their theory related to disclosure and how that would substantiate a likelihood of success of some theory of liability in their Reply, we respectfully reserve the right to respond more fulsomely at the hearing if requested.  As of now, the Defendants do not quite know what they claim they are responding to as it relates to purported disclosures.

### E       Conclusion

For these reasons the Defendants respectfully submit that the Motion for a Preliminary Injunction should be denied.  Separately the Defendants will move to vacate the TRO and for other relief.  And as noted, we await a signed Affidavit from the Defendants' representative who is currently in Europe, but respectfully this Motion for a Preliminary Injunction can be denied based on the record before the Court as developed by the Plaintiff themself.

Dated: May 13, 2024

RESPECTFULLY SUBMITTED,

By:

Baruch S. Gottesman, Esq.
New York Bar No. 4480539
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 401-6910
bg@gottesmanlegal.com
*Counsel for Defendants*

Served via ECF on all Appearing Parties